Mr. Justice Wylie
delivered the opinion of the court:
Complainant was a member, and the defendants were either officers of or trustees for “The Economical Building Association” of this District. The controversy is as to the amount due- by the complainant to the association; the latter claiming that on the 14th of February, 1872, Pabst was its debtor to the amount of $7,579.10.
In the year 1868, complainant became first a member of the association, and in the course of the following year was the owner of 120 shares, the value of which was $200 a share after all the payments should have been made up. The shares were to be paid for at the rate of one dollar on each, per month, or $120 for the 120 shares. At this rate, his shares would all have been paid for at the end of sixteen years and eight months; but the actual value of the shares at any in *399 termediate date depended upon the amount of payments which had previously been made on their account, and the business of the association and its future prospects.
At different periods daring the year 1869, Pabst was advanced money by the association to the amount of $10,770. This was a much larger sum than had been paid by him, at that time, on account of his shares, and, of course, a much larger sum than the shares were actually worth of themselves. But for the purpose of securing the association, he executed deeds of trust upon a valuable lot and its improvements in this city, and entered into obligations thereafter to pay to the association $140 a month, or two dollars on each share held by him, until the whole amount of $200 a share had been fully paid up, or the association brought to a close. The security given was not for the purpose of protecting a debt of an ascertained sum, but to compel the member obtain» ing the advance to meet his monthly payments. The money advanced was not a loan by the association, but a purchase of the member’s shares, leaving him without further interest in the association, except his obligation to pay for them to the uttermost farthing, by monthly installments to the end. If the association should not be able to close up its business until the full completion of the period of sixteen years and eight months, the member who was advanced on 120 shares would have paid $24,000 into the treasury, in an average period of eight years and four months.
But by means of the rapid compounding of interest by means of monthly loans, and the fund derived from fines for default of members in paying up their monthly dues, the period for closing the business of an association may be greatly abridged. For at whatever period the funds of the association will enable it to “ divide to each share of stock the sum of two hundred dollars, less thirty per centum, the association shall determiue and close.” The more prosperous, therefore, is the association, the briefer its existence. It cannot be told for what length of time a member who has an advance upon his stock may be required to pay up his monthly dues. If the profits derived from compounding interests at high rates, and short intervals, and from fines, arelarge, thisperiod will be short. If these profits are not large, it will be more remote. *400 If the period be short, the member advanced will have the benefit, for by the close of the association he is relieved from making his monthly payments, and so, although no longer a member of the association, he is a sharer in its profits. If the time for closing up the business be.more protracted, the member advanced loses that advantage; but under no circumstances is he required to pay beyond the nominal value of his stock.
Whether the arrangement shall turn out to be favorable to the member advanced, or otherwise, depends upon the success of the association. If it be successful, although no longer a member for some purposes, he shares in the profits; if unsuccessful, he may be a loser, but only to a limited extent.
We discover nothing, therefore, in the nature of this association which is unlawful, or in any wise necessarily more objectionable than other associations whose object is to make profit for their members. On the contrary, so far as it holds out encouragement to its members to save their earnings instead of squandering them in idleness and vice, it deserves to be supported and encouraged.
If, however, persons will join these associations in the expectation of borrowing money at pleasure, with no obligation ever to repay it, or subscribe for an amount of stock on which they are unable to meet the monthly dues, and thus subject themselves to fines at the rate of 120 per cent, per annum interest on the sums in arrear, disappointment and bankruptcy are to be expected.
There is another class, also, for whom these associations are unprofitable, namely, those who, having subscribed for shares and received advances for which they have mortgaged their homesteads, are afterward overtaken by sickness, or other inevitable calamity, depriving them of the power to meet their payments.
But for the laboring man, blessed with health, industrious, frugal, temperate, and resolute, these associations, if controlled by men like himself, are admirable institutions. Such a man, however, may win his fortune without their aid; and by joining them, takes the risk of wasting his time, and forming a connection with those who may defraud him of his. *401 property. So much as to the subject of building-associations iu general.
In respect to the particular matter in controversy in the present case, the facts seem to be as follows: In March, 1869, Pabst was the owner of 120 shares of stock in this company, on which he, or those of whom he purchased, had been making monthly payments. At that time he obtained advances from the association amounting to $10,770. These advances, he it remembered, were not loans. In order to secure the association for these advances, he executed two deeds of trust upon certain improved real estate in this city, both of the same form, from one of which the following is an extract:
“Whereas, heretofore, to wit, on the- day of-, in the year of our Lord one thousand eight hundred and sixty-nine, the said party hereto of the first part, by his writing obligatory of that date, acknowledged himself to be indebted to Nicholas Callan, the treasurer of said association, in the sum of twenty-two thousand dollars, and delivered the same to the said treasurer; and whereas the said writing obligatory is subject to a certain condition thereunder written to the effect that he, the said Matthias Pabst and his heirs, executors, and administrators, shall well and truly pay, or cause to be paid, to the treasurer of the association, and to his successor in office, the sum of two dollars current money per month for every share of stock which he, the said Matthias Pabst, holds in said association, commencing from the date hereof, and to be paid on the first Wednesday of each month thereafter, and also all fines and forfeits which may be imposed upon or incurred by him, by virtue of the provisions contained in the constitution, by-laws, and obligations of the said association, until the said association shall determine and close; and in order to secure the faithful performance of the condition in said writing obligatory mentioned, and stipulated to be performed by the said party hereto of the first part, he, the said party of the first part, hath agreed, to execute these presents:
“Now, this indenture witnesses,” &c.
Here we find no obligation to pay any debt, but only that the party of the first part shall pay two dollars a month on *402 each share of his stock, and all fines and forfeits, until the close of the association.
The deed further provides that, on default in making these payments for a period of four months, the trustee, on being requested so to do by the association, shall proceed to sell the property so conveyed in trust, &e.
The date of this deed is the 10th of December, 1869. The other is dated 21st December, 1S70.
Each of them was given to secure the punctual payment of the monthly dues only from and after their respective dates. So that the payment of no dues, if any such exist, could be enforced even under the oldest of these deeds, except such as have accrued on and since the first Wednesday in January, 1870.
On the 29th of February, 1872, the secretary of the association gave a written notice to Mr. Pabst that his property would be advertised and sold under these deeds of trust unless his indebtedness to the association were paid within ten days, and inclosed a statement of amount claiming a balance due of $7,579.10. To restrain such sale, -.and -to obtain a settlement of his account with the association^ the present bill was then filed.
According to defendant’s answer, Pabst’s
Advances amount to............................$10, 770
And his payments to........................... 10,258
Balance, without calculation of interest.......... 512
And yet defendant claimed there was still due $7,579.10, and was threatening to sell the property unless this sum were paid in ten days.
The fines amounted to only $522.45, and the insurance advanced by the association on account of Pabst to only $40 more.
Conceding that from the first Wednesday of January, 1870, inclusive, to the 29th of February, 1872, when the account was rendered and payment demanded, that Pabst made default in every one of his monthly dues, the sum would have amounted to only $6,000. But he had in fact paid within that time $10,258 on account, and which ought to have been applied so far as was necessary to the payment *403 of any of these- monthly dues. In that case the dues would all have been paid, and no fines could have been laid; and a large balance have remained in the treasury of the association to the credit of Pabst, to be appropriated as he might choose to direct, or might be agreed upon. The great error in the account is in the item of $8,807.50 charged to Pabst in June, 1869, as “loan on 110 shares.”
Now, as we have seen, there was no loan in the case, much less any loan secured by either of these deeds of trust. The company took his stock and advanced him money in consideration of what had already been paid, and on the monthly dues yet to be paid by Pabst. All that Pabst had to do to pay that loan,” as it is here called, was to pay his monthly dues at maturity until the close of the association. The same error appears in a subsequent item of the account, where he is charged with “ loan on forty shares of stock in December, 1870” — $4,420.
If these were loans, they are not secured by these deeds of trust, and, besides, would be clearly usurious.
If they-constitute the advances which were intended to be, and which in fact were, so secured, they ought not to appear in the account, so long as the property remains unsold. Under these contracts, Pabst was obliged only to the payment of his monthly dues at maturity. These had been paid up and more than paid, in advance. If he continue to pay them until his payments shall reach $200 on each share, or until the company can wind up its business by paying that amount, less thirty per cent., his debt will be paid, because that is the contract of the parties, and agrees exactly with the scheme and constitution of the association. By a proviso to be found in the seventh section of the constitution of this society it is declared “that no stockholder shall be permitted to withdraw who has received any portion of his stock in advance from the association until the same is fully repaid.”
At the argument of the case, counsel for the association were asked by the court to say what was their construction of this proviso, and seemed to be at a loss as to how it should be interpreted. Its language is certainly far from being clear. We are inclined to think it should be construed ás if it had been written, any advances upon his stock, &c. In that sense *404 it seems to have been understood by both the complainant and the defendants. The former is anxious to withdraw, and prays for an account. He is entitled to withdraw on paying up any balance due by him on a settlement of the accounts, and this was the precise effect of the decree which was passed by the court below. The fines or penalties for default in the monthly payments were excluded, and properly so, for, independently of the repugnance of a court of equity to aid in enforcing penalties of the oppressive character of those prescribed in the constitution of this association, the sums which the complainant had paid into the treasury of the defendant, from time to time, though not by regular payments of $240 a month, far exceeded the sum which these payments amounted to at the time the account was rendered.
We have seen that on the 19th of February, 1872, the association rendered its account, charging Pabst with the full amount of the advances received by him, calling them loans, and threatening that it would proceed to have his property sold under the deeds of trust unless within ten days he should pay up these loans, as well as the other claims set out in the account. We have seen, also, that at this date Pabst was 'notin default as to his monthly payments, but, on the contrary, was entitled to a large balance to his credit, and that his property was not liable to sale under the deeds of trust so long as that was the condition of the account between him and the association. By this step the association elected to treat him as a borrower. He might have still claimed his right to continue his connection with the society, and have the amount then to his credit applied, from time to time, to the payment of his monthly dues until that amount was exhausted, and afterward to meet the monthly dues by new payments, and ultimately have the advances made to him repaid from his share in the profits of the association at its close. He has chosen, however, to take the association at its own word, and has come into court praying an account, and asking to be relieved from his connection with the association ; and to this relief we think he is entitled upon the very terms prescribed in the decree of the court below, namely, that the advances shall be treated as loans, and his payments as credits upon them.
The decree at special term is affirmed with costs.